**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

_____

TIFFANY A. PATTERSON )
42069 Mansfield Park Court )
Chantilly, Virginia  20152 )
                             )
       Plaintiff, )
                             )
          v. )
                             )
DEJIA LLC d/b/a )      Civil Action No. _____
  LANSDOWNE RESORT AND SPA )
44050 Woodridge Parkway )
Leesburg, Virginia 20176 )
                             )
Serve:  CT Corporation System )
       4701 Cox Road, Suite 285 )
       Glen Allen, Virginia  23060 )
       Registered Agent )
                             )
       and )
                             )
TROON GOLF, LLC d/b/a )
  LANSDOWNE RESORT AND SPA )
15044 N. Scottsdale Road, Suite 300 )
Scottsdale, Arizona  85254 )
                             )
Serve:  CT Corporation System )
       4701 Cox Road, Suite 285 )
       Glen Allen, Virginia  23060 )
       Registered Agent )
                             )
       Defendants. )
_____ )

## <u>COMPLAINT</u>

      COMES NOW THE PLAINTIFF, TIFFANY A. PATTERSON, by counsel, and moves

this Court for entry of judgment in her favor, and against the Defendants, DEJIA LLC d/b/a

LANSDOWNE RESORT AND SPA, and TROON GOLF, LLC d/b/a LANSDOWNE RESORT

AND SPA, and in support of such motion alleges and avers as follows:

## NATURE OF ACTION

1.     This action states a claim for gender discrimination and hostile work environment

in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*., and retaliation,

in violation Title VII of the Civil Rights Act of 1964 after Plaintiff complained about the

discrimination and hostile work environment, and asked that action be taken to protect her.

## PARTIES

2.     Plaintiff Tiffany A. Patterson ("Ms. Patterson") is a resident and citizen of

Loudoun County in the Commonwealth of Virginia and at all times relevant hereto, was (and is)

employed by Defendants in this judicial district.

3.     Ms. Patterson was (and is) an "employee" of Dejia LLC and Troon Golf, LLC

within the meaning of 42 U.S.C. § 2000e(f).

4.     Dejia LLC and Troon Golf, LLC are each "employers" within the meaning of 42

U.S.C. §2000e(b).

5.     Dejia LLC d/b/a Lansdowne Resort and Spa, headquartered in this judicial

district, is a limited liability corporation registered and in good standing with the Virginia State

Corporation Commission, and maintains an agent for the service of process in the Commonwealth

of Virginia.

6.     Dejia LLC "does business as" Lansdowne Resort and Spa, as well as Lansdowne

Resort and Conference Center,  Lansdowne Golf Clubhouse, and the Lansdowne Golf Course.

Ms. Patterson's paychecks, however, came from Troon Golf, LLC.

7.      Troon Golf, LLC, d/b/a Lansdowne Resort and Spa, headquartered in Scottsdale, Arizona, is a limited liability corporation registered and in good standing with the Virginia State Corporation Commission, and maintains an agent for the service of process in the Commonwealth of Virginia.

8.      Troon Golf is the largest golf course management company in the world with over 200 golf courses under its management.  Troon Golf manages daily fee, resort and private clubs in more than 25 countries and 30 states, including the Lansdowne golf course.

9.      Defendants are engaged in an industry affecting commerce and have had more than 500 employees in each of twenty or more calendar weeks in the current or preceding year, within the meaning of 42 U.S.C. § 2000e(b).

## JURISDICTION AND VENUE

10.     The amount in controversy in this action exceeds the jurisdictional minimum amount for this Court.

11.     The causes of action alleged in this action arose in this judicial district, in the County of Loudoun, in the Commonwealth of Virginia.

12.     Ms. Patterson is a resident and citizen of this judicial district and at all times relevant hereto, was (and is) employed by Defendants in this judicial district.

13.     Defendants are present in and conduct business in this judicial district, and the acts complained of herein occurred in this judicial district.  Therefore, Defendants are subject to the personal jurisdiction of this Court.

14.     The unlawful employment practices in this case were committed in this judicial district, and Ms. Patterson would have continued to work for Defendants in this judicial district but for the Defendants' unlawful practices.

15.     This Court has jurisdiction over Ms. Patterson's claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1331.

17.     Jurisdiction and venue are proper in this Court.

## PROCEDURAL STATUS

18.     Ms. Patterson timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on July 30, 2019.

19.     The EEOC issued a Right to Sue on June 18, 2020.

20.     This action is timely filed.

## BACKGROUND

21.     Reference herein to Coton & Rye or "the restaurant" includes, collectively, Dejia LLC and Troon Golf. LLC.

22.     Ms. Patterson began her employment as a server in Coton & Rye, a restaurant and tavern on the Lansdowne Resort and Spa property, in February 2019.

23.     At all times during her employment, Ms. Patterson performed her job in a more than satisfactory manner.  This is evidenced by the fact that Ms. Patterson received three "pay it forward" awards since February 2019 – meaning that several resort guests noted that in their surveys that Ms. Patterson did an outstanding job.

24.     Because Ms. Patterson also worked a full-time job during the day, her availability and hours were agreed to up front at the time of her hire (four night shifts during the week only, starting at 5 PM or after, and no weekends).  This schedule put Ms. Patterson over the 30 hour minimum she needed to maintain in order to be eligible for insurance benefits.  Ms. Patterson was assured by Greg Hannah ("Mr. Hannah") that her requested schedule would not be a problem.  Mr. Hannah became Ms. Patterson's supervisor upon her hire.

25.     Despite this, during times when the restaurant was under-staffed, or short staffed due to vacation schedules, Ms. Patterson was often scheduled to work six nights each week to fill in.  Many nights Ms. Patterson was scheduled to close (so she did not get off work until approximately 1 AM), because there was no procedure in place for staff rotation for closings.

26.     In addition, Ms. Patterson observed that Mr. Hannah only assigned male servers to wait on large parties, and then those (male) servers were allowed to leave once the large party was gone – not staying for closing duties.

27.     Mr. Hannah has, on several occasions, told Ms. Patterson that she cannot carry trays up the stairs because she is "a girl."

28.     When Ms. Patterson tried to approach Mr. Hannah regarding a customer issue, he brushed her off and said he was busy.

29.     On Saturday, May 11, 2019, Ms. Patterson advised Andre Milla ("Mr. Milla"), a co-worker, that guests had arrived and had been sitting at one of his tables with no water or menus, so she had taken water and menus to his table.  Ms. Patterson then asked Mr. Milla take over the table, and continued to work her own section.  Soon after, Ms. Patterson noticed Mr. Milla was nowhere to be found, and had not returned to the table to take his guest's drink orders. This was unacceptable service, and other servers had previously complained to Mr. Hannah about Mr. Milla disappearing and ignoring his guests.

30.     When Ms. Patterson saw Mr. Milla awhile later, she let him know she had resumed service for the table since he had disappeared and neglected the guests.  In response, Mr. Milla looked at Ms. Patterson and said, "Fuck you, c*unt," and walked up the stairs.  Ms. Patterson walked away without responding.

5

31.     Shortly after this, Ms. Patterson saw Mr. Milla speaking to Mr. Hannah.  Mr. Hannah then approached Ms. Patterson as she was serving food to customers, and aggressively told her to "stay away" from Mr. Milla for the rest of the evening.  When Ms. Patterson responded to Mr. Hannah that he was not aware of what had taken place between her and Mr. Milla, Mr. Hannah said "it doesn't matter.  We're busy - just do as you're told."  This unjustified reprimand was done on the floor, in the presence of guests and staff, which was both humiliating and demeaning for Ms. Patterson, and inappropriate and unprofessional on Mr. Hannah's part.

32.     Mr. Milla was not similarly reprimanded, despite the fact that he was the one who made the hostile, sexually discriminatory and vulgar comment.

33.     Later that evening, Ms. Patterson told Mr. Hannah what had actually transpired with Mr. Milla, and asked that action be taken to address the inappropriate, hostile and discriminatory comment made to her.  While Ms. Patterson was speaking, Mr. Hannah did not even acknowledge her presence, and then he just walked away without responding.

34.     When Ms. Patterson had a short break later that evening, she told Layla Fore (also a Manager) about the incident.  Ms. Fore said she would handle it, and discuss it with Mr. Hannah.

35.     Ms. Patterson has complained to Ms. Lore on several occasions about Mr. Hannah, including his not rotating the schedule so that Ms. Patterson worked more shifts than other servers, and assigning only male servers to large parties.

36.     Despite Ms. Fore's assurances to Ms. Patterson nothing was done to address the extremely inappropriate, unprofessional, hostile and discriminatory conduct towards her.

37.     Therefore, on May 13, 2019, Ms. Patterson sent a detailed email to Human Resources (Wally Roberson and Kris Diemar), regarding the hostile and discriminatory treatment she had been subjected to, not just by Mr. Milla, but by Mr. Hannah as well.  Ms. Patterson also clearly stated that she feared retaliation by Mr. Hannah for complaining.

38.     On May 15, 2019, Ms. Patterson met with Wally Roberson and Kris Diemar regarding her complaint.  Both assured her things would be "taken care of."  However, nothing was done.

39.     After Ms. Patterson complained, despite the restaurant being fully staffed, Mr. Hannah has scheduled Ms. Patterson for six nights per week, with only one night off, while all of the other servers are scheduled for five nights, with two off.  Ms. Patterson believes this is in retaliation for her complaints against him.  Ms. Patterson was scheduled to close on all of those nights.

40.     When Ms. Patterson finally had a day off, Mr. Hannah called her in to work. When she said she could not come in, Mr. Hannah gave Ms. Patterson the ultimatum of reporting to work, or being terminated.

41.     Mr. Hannah was aware that Ms. Patterson needed the job for the insurance benefits, and did not want to lose it.

42.     In addition, after Ms. Patterson complained to HR, Mr. Hannah instructed other staff members not to speak to her.

43.     On May 17, 2019, when Ms. Patterson received her schedule, it was apparent that she had been scheduled to work for all of the days she had requested to *not* be scheduled.  Before the schedule came out, Ms. Patterson had given Mr. Hannah her availability for the next six weeks (including times when she would be out of town).  Mr. Hannah  intentionally scheduled

Ms. Patterson for the dates she had requested *not* to be scheduled in retaliation for her complaints.

44.     As soon as Ms. Patterson received the schedule, she immediately emailed Kris Diemar and Wally Robeson in HR, asking for a return call.  When Mr. Diemar returned her call the following day, he seemed annoyed and irritated.  Although Ms. Patterson told Mr. Diemar that she was not comfortable working with Mr. Milla, Ms. Patterson was still scheduled to work with him.

45.     On May 27, 2019, Mauricio, the Manager in the Club House, told Ms. Patterson he was very short staffed, and said he would like to have her working there.  He gave Ms. Patterson a tour of the Club House.  Ms. Patterson understood at the time she became employed that she had to be employed for 90 days prior to making a transfer request.  Ms. Patterson met that criteria.

46.     On May 29, 2019, Ms. Patterson went to Naz (last name unknown) in HR and requested a transfer to the Club House, explaining that the Manager of the Club House had asked her to transfer.  At that point, Naz said Ms. Patterson would need to be employed for 180 days prior to any transfer, and she [Naz] further stated that staffing at the Club House was full.  This directly contradicted the Club House Manager's statement that he was very short staffed.

47.     When Ms. Patterson explained to Naz that she was not comfortable working with Mr. Milla, and that she did not want to work in Coton and Rye's hostile work environment, Naz suggested that Ms. Patterson reduce her schedule to two days per week, or quit.

48.     Ms. Patterson's request to transfer was denied as a further act of retaliation against her for her complaints, and her insistence that action be taken to address them.

49.     On July 11, 2019, Ms. Patterson's employer received a copy of her EEOC Charge, pre-filing, in the hopes that action would be taken to remedy the hostile work environment and retaliation to which Ms. Patterson was being subjected.

50.     Instead, after receiving a copy of this Charge pre-filing, Ms. Patterson's hours were reduced.  Coton and Rye, and specifically Mr. Hannah, were aware (both at the time of her hire as well as through statements contained in the EEOC Charge, which her employer received pre-filing) that meeting the minimum 30 hours requirement to be eligible for insurance benefits was a priority for Ms. Patterson.

51.     After receiving a copy of Ms. Patterson's EEOC Charge pre-filing, her schedule was reduced to three days a week, instead of the four or more Ms. Patterson was usually scheduled for, placing Ms. Patterson below the 30 hour threshold to be eligible for insurance benefits.

52.     This was a further act of retaliation for her complaints, and in particular because Ms. Patterson made known her intent to file an EEOC Charge if her employer did not take steps to remedy the hostile work environment and retaliation to which she was being subjected.

53.     In October 2019, Ms. Patterson resigned her employment since she could no longer endure the discriminatory and hostile environment to which she was being subjected, with no protection from the illegal conduct, despite her complaints.

54.     Ms. Patterson was discriminated against and subjected to a hostile work environment, because of her gender (female), and retaliated against for complaining about the discrimination and hostile work environment, in violation of Title VII of the Civil Rights Act of 1964.

**COUNT ONE**
**DISCRIMINATION AND HOSTILE WORK ENVIRONMENT DURING**
**THE COURSE OF EMPLOYMENT IN VIOLATION OF TITLE VII**
**(Against Dejia LLC and Troon Golf, LLC)**

55.     The allegations of the foregoing paragraphs are incorporated as if realleged herein.

56.     Defendants discriminated against Ms. Patterson, treated Ms. Patterson in a disparate manner, and subjected Ms. Patterson to a hostile work environment because of her gender (female).

57.     Acts of discrimination include:

- Assuring Ms. Patterson at the time of her hire that her requested schedule of four night shifts on weekdays only, starting at 5 PM or after (when she got off work from her full-time day job), and no weekends, could be accommodated, but nevertheless often scheduling Ms. Patterson to work six nights each week to fill in, scheduling her to close (meaning she did not leave work until approximately 1:00 AM) on many of those nights (knowing she had to report to her full-time day job the next morning=).

- Assigning male servers to wait on large parties, and then allowing those male servers to leave once the large party was gone, without having to perform closing duties.

- Mr. Hannah telling Ms. Patterson on several occasions that she cannot carry trays up the stairs because she is "a girl." Ms. Patterson was perfectly capable of, and did, carry trays up the stairs.

- Mr. Hannah brushing Ms. Patterson off and telling her he was too busy when she attempted to approach him on a customer matter (and not treating male employees in similar manner.

- Failing to take any action against Mr. Milla after he said "Fuck you, c*unt" to Ms. Patterson and instead, after talking to only Mr. Milla, admonishing Ms. Patterson to "stay away" from Mr. Milla for the rest of the evening.

- Refusing to listen to Ms. Patterson's account of the confrontation with Mr. Milla (after taking the time to speak to Mr. Milla) and telling her "it doesn't matter. We're busy - just do as you're told," in the presence of guests and staff, which was both humiliating and demeaning for Ms. Patterson, and inappropriate and unprofessional on Mr. Hannah's part. Mr.

58.     Later that evening, Ms. Patterson told Mr. Hannah what had actually occurred with Mr. Milla, and asked that action be taken to address the inappropriate, hostile and discriminatory comment.  While Ms. Patterson was speaking, Mr. Hannah did not even acknowledge her presence, and he just walked away without responding.

59.     Ms. Patterson also reported the incident to Layla Fore (also a Manager) later that evening.  Ms. Fore said she would handle it, and talk to Mr. Hannah about it.  However, nothing was done.

60.     Ms. Patterson also complained to Ms. Lore on several occasions about Mr. Hannah's discriminatory and hostile treatment of her, including his not rotating the schedule so that Ms. Patterson worked more shifts than other servers, assigning Ms. Patterson to close on more shifts than other servers, and assigning only male servers to large parties.  However, despite Ms. Fore's assurances, nothing was done to address the extremely inappropriate, unprofessional, hostile and discriminatory conduct towards Ms. Patterson.

61.     On May 13, 2019, Ms. Patterson sent a detailed email to Human Resources (Wally Roberson and Kris Diemar), regarding the hostile and discriminatory treatment she had been subjected to by Mr. Milla and Mr. Hannah, and that nothing had been done to address the conduct or protect her from it.  Ms. Patterson specifically stated that she feared retaliation by Mr. Hannah for complaining.   Although both Wally Roberson and Kris Diemar assured Ms. Patterson that things would be "taken care of," there was no further follow up.

62.     Male employees were not subjected to similar treatment.

63.     Defendants' discriminatory treatment of Ms. Patterson violated Title VII of the federal Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1).

64.     In discriminating against Ms. Patterson in violation of federal law, Defendants evidenced malice, spite, and ill will; its actions were willful and wanton; and evinced a conscious disregard for the rights of Ms. Patterson.

65.     As a direct and proximate result of Defendants' actions, Ms. Patterson has suffered and continues to suffer emotional distress and physical injury.  Such injury includes pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, decreased self-esteem, loss of confidence, insomnia, headaches, exhaustion, depression, anxiety, stress, panic attacks, fearfulness, stress and anxiety, loss of enjoyment of life, withdrawal from social interaction, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, and other non pecuniary losses.

66.     Due to the conscious disregard for Ms. Patterson's federally protected rights, and the severity of Defendants' conduct, Ms. Patterson is also entitled to punitive damages.

**COUNT TWO –**
**RETALIATION AND CONSTRUCTIVE DISCHARGE IN VIOLATION OF TITLE VII**
**(Against Dejia LLC and Troon Golf, LLC)**

67.     The allegations of the foregoing paragraphs are incorporated as if realleged herein.

68.     Ms. Patterson was vocal in her objections to the discriminatory treatment to which she was subjected based on her gender, including making verbal complaints to Mr. Hannah, Layla Fore on multiple occasions, and a formal, written complaint to HR (Wally Roberson and Kris Diemar).

69.     Thereafter, Ms. Patterson was retaliated against in retaliation for her complaints about the discriminatory and hostile treatment to which she was subjected.

70.     Acts of retaliation included:

- Mr. Hannah scheduling Ms. Patterson for six nights per week, with only one night off, despite the restaurant being full staffed, and while all of the other servers are scheduled for five nights, with two off.

- Calling Ms. Patterson in to work on her one day off – a day she was not on the schedule - and, when she said she could not come in, giving Ms. Patterson the ultimatum of reporting to work, or be terminated (this was especially egregious since Mr. Hannah was aware that Ms. Patterson needed the job for the insurance benefits, and did not want to lose it, so would have no choice).

- Mr. Hannah instructing other staff members not to speak to Ms. Patterson after she complained to HR.

- Intentionally scheduling Ms. Patterson to work on the specific days she had requested off (including days she would be out of town), even though she provided her six-week availability to Mr. Hannah prior to the scheduling being made.

- Continuing to schedule Ms. Patterson to work shifts with Mr. Milla, even when Ms. Patterson had told Mr. Hannah and HR that she was uncomfortable working with Mr. Milla after his hostile treatment of her.

- HR refusing to allow Ms. Patterson to transfer to the Club House even though the transfer was requested by the Club Manager who told Ms. Patterson the Club was understaffed, and falsely telling Ms. Patterson that the Club was fully staffed.

- HR telling Ms. Patterson that if she was not comfortable working with Mr. Milla, and that if she did not want to work in Coton and Rye's hostile work environment, Ms. Patterson should reduce her schedule to two days per week, or quit.

- Reducing Ms. Patterson's schedule to three days a week, instead of four, after receiving a copy of her EEOC Charge, pre-filing, placing Ms. Patterson below the 30 hour threshold to be eligible for insurance benefits.

71.     This retaliation is in violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. §2000e, *et seq.*.

72.     This conduct by Defendants was actuated by malice, spite, and ill-will; was willful

and wanton, and evinced conscious disregard for the rights of Ms. Patterson.

73.     As a direct and proximate result of Defendants' actions, Ms. Patterson has

suffered and continues to suffer emotional distress and physical injury.  Such injury includes

13

pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, decreased self-esteem, loss of confidence, insomnia, headaches, exhaustion, depression, anxiety, stress, panic attacks, fearfulness, stress and anxiety, loss of enjoyment of life, withdrawal from social interaction, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, and other non pecuniary losses.

74.     Due to the severity of Defendants' conduct, Ms. Patterson is also entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff TIFFANY A. PATTERSON requests that this Court enter judgment in her favor, and against Defendants DAJIA LLC d/b/a LANSDOWNE RESORT AND SPA and TROON GOLF, LLC d/b/a LANSDOWNE RESORT AND SPA on the above stated Counts; and further:

(a)     Award Ms. Patterson compensatory damages to be determined by a jury, plus demonstrated past and future pecuniary damages on the above-stated Counts One and Two; and in addition

(b)     Award Ms. Patterson punitive damages on Counts One and Two per the statutory cap; and in addition

(c)     Award Ms. Patterson' attorneys' fees and the costs of this action; and in addition

(d)     Award injunctive relief consisting of an order prohibiting Defendants from engaging in further employment practices that create or tolerate a discriminatory work environment; and in addition

(e)      Award Ms. Patterson such other and further relief as may be appropriate under the circumstances.

## **JURY DEMAND**

PLAINTIFF TIFFANY A. PATTERSON DEMANDS A TRIAL BY JURY.

July 23, 2020                              Respectfully submitted,

*/S/ CARLA D. BROWN*
Carla D. Brown
Virginia Bar No. 44803
cbrown@cbcblaw.com
CHARLSON BREDEHOFT
  COHEN &  BROWN, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
(703) 318-6800  Telephone
(703) 318-6808  Facsimile
*Counsel for Plaintiff, Tiffany A. Patterson*